```
                    DISTRICT COURT OF THE VIRGIN ISLANDS
                     DIVISION OF ST. THOMAS AND ST. JOHN

WILNICK DORVAL,                      )
                                     )
          Plaintiff,                 )
                                     )
          v.                         )    Civil No. 2017-37
                                     )
JEFFERSON BEAUREGARD SESSIONS,       )
III; PREETINDER SINGH BHARARA;       )
JOON H. KIM; JOAN LAUGHNANE;         )
JAMES CORNEY; ANDREW G. MCCABE;      )
JOSEPH M. DEMAREST; MARY JO          )
WHITE; JAY CLAYTON; MICHAEL S.       )
PIWOWAR; KARA M. STEIN; DENNIS       )
DOREZA; THOMAS D. HOMAN;             )
NICHOLAS GUS; FRANK FABIO;           )
UNITED STATES SECURITY AND           )
EXCHANGE COMMISSION; FINANCIAL       )
INDUSTRY REGULATORY AUTHORITY;       )
U.S. DEPARTMENT OF JUSTICE;          )
UNITED STATES DISTRICT               )
ATTORNEY'S OFFICE FOR THE            )
SOUTHERN DISTRICT; U.S.              )
IMMIGRATION AND CUSTOMS              )
ENFORCEMENT; FEDERAL BUREAU OF       )
INVESTIGATION; JET BLUE AIRWAYS      )
CORP.; UNITED STATES POSTAL          )
SERVICE; ST. MARY'S MEDICAL          )
CENTER; ROBIN HAYES; UNITED          )
STATES OF AMERICA,                   )
                                     )
          Defendants.                )
```

**APPEARANCES:**

**Wilnick Dorval**
St. Thomas, U.S.V.I.
    *Pro se plaintiff,*

**Mark D. Hodge**
Hodge & Hodge
Law Offices of Wilfredo Giegel
St. Thomas, U.S.V.I.
    *For Jet Blue Airways Corp.*

**Gretchen Shappert, United States Attorney**
**Sansara Adella Cannon, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
    *For the United States of America.*

## MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court is the motion of the United States to dismiss for lack of subject matter jurisdiction.

### I. FACTUAL AND PROCEDURAL HISTORY

On May 30, 2017, Dorval commenced this action by filing a complaint in this Court. On June 1, 2017, Dorval filed an amended complaint. On June 7, 2017, Dorval filed a second amended complaint, which the Magistrate Judge struck from the record. Later that day, Dorval filed a motion to amend his complaint. On June 28, 2017, Dorval filed a second motion to amend his complaint along with a proposed amended complaint (the "Second Amended Complaint"), which is 100 pages in length. The Court subsequently granted Dorval's June 28, 2017, motion to amend his complaint.

The Second Amended Complaint names as defendants, the United States, the United States Postal Service (the "USPS"), the "United States Security [sic] and Exchange Commission" (the

"SEC"), the Financial Industry Regulatory Authority (the "FINRA"), the Department of Justice (the "DOJ"), Immigration and Customs Enforcement ("ICE"), the Federal Bureau of Investigation (the "FBI"), several federal officers and employees (collectively, the "federal defendants"),[1] JetBlue Airways Corporation ("JetBlue"), St. Mary's Medical Center ("St. Mary's), and several officers and employees of JetBlue and St. Mary's.[2] Generally, the Second Amended Complaint alleges that all of these organizations and individuals conspired amongst one another and with others not named to make Dorval's life difficult because Dorval is black and from Haiti.

On September 25, 2017, the United States moved to dismiss Dorval's Second Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Dorval subsequently filed an opposition to that motion.

## II. **DISCUSSION**

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") governs motions to dismiss for lack of subject-matter

---

[1] The federal officer and employee defendants are Jefferson Beauregard Sessions III, Rod Rosenstein, Preetinder Singh Bharara, Joon H. Kim, Joan Laughnane, James Comey, Andrew G. McCabe, Joseph M. Demarest, William F. Sweeney Jr., Mary Joe White, Jay Clayton, Michael S. Piwowar, Kara M. Stein, Dennis Doriza, Megan Brennan, Ronald A. Stroman, Thomas D. Homan, Nicholas Gus, and Frank Fabio.
[2] The private officer and employee defendants are Robin Hayes, Joel Peterson, Frank Sica, and Gabrielle Finley-Hazle.

jurisdiction. A Rule 12(b)(1) motion may be treated as either a facial or a factual challenge to a court's subject-matter jurisdiction. *See Gould Elecs. V. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

In considering a facial challenge to subject-matter jurisdiction under Rule 12(b)(1), all material allegations in the complaint are taken as true. *Id.* at 189-92; *see also Taliaferro v. Darby Township. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (summarizing the standard for facial attacks under Rule 12(b) as "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court"). When a party has yet to answer the Complaint or engage in discovery, the motion to dismiss is a facial attack on the Court's subject matter jurisdiction. *See Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial").

"[A] factual challenge[] attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d

Cir. 2016) (original alterations omitted) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)); see also *Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police,* 920 F.2d 198, 200 (3d Cir.1990) (holding that factual basis for jurisdictional allegations in complaint could be disputed before answer was served). Where a motion to dismiss factually challenges the district court's jurisdiction, the court is not confined to the allegations in the complaint, but can consider other evidence, such as affidavits, depositions, and testimony, to resolve factual issues related to jurisdiction. *See Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (stating that because at issue is the very power of the trial court to hear the case, a court is free to weigh evidence beyond the allegations in the complaint). Furthermore, "no presumptive truthfulness attaches to plaintiff's allegations" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.*

### III. ANALYSIS

Federal Courts lack jurisdiction to consider claims that "are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly unsubstantial, or no longer open to discussion." *DeGrazia v. F.B.I.*, 316 Fed. App'x 172, 173 (3d Cir. 2009) (internal

quotation marks omitted) (quoting *Hagans v. Lavine,* 415 U.S. 528, 536-37 (1974)); *see also Neitzke v. Williams*, 490 U.S. 319, 327 n.6 (1989) ("A patently insubstantial complaint may be dismissed . . . for want of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."). Allegations that meet this standard are those that make out "fantastic scenarios" that "lack[] any arguable factual basis." *DeGrazia*, 316 Fed. App'x at 173.

In *Degrazia v. F.B.I.*, 316 Fed. App'x 172 (3d Cir. 2009), John DeGrazia ("DeGrazia"), a *pro se* plaintiff, filed a complaint against the Federal Bureau of Investigation and the Department of Defense. *Id.* at 172. DeGrazia alleged that, "at the age of four, he was the victim of a government-run, Nazi-designed genetic experiment which caused his body to combine with reptile DNA, and that he has since experienced harmful side effects which pose a threat to others." *Id.* The district court dismissed the complaint and DeGrazia appealed. *Id.* On appeal, DeGrazia argued that the case should be remanded because "the order and opinion dismissing his case was the product of undue influence exerted by attorneys for the [defendants]." *Id.*

The Third Circuit affirmed. *Id.* The Third Circuit held that the district court lacked subject matter over DeGrazia's claims because "they rel[ied] on fantastic scenarios lacking any

arguable factual basis." *Id.* The Third Circuit also observed that the "alleged conspiracy" between the district court and the defendants--"which DeGrazia offers no credible evidence to support--only serves to bolster the District Court's conclusion" that DeGrazia's complaint was "so attenuated and unsubstantial as to be absolutely devoid of merit." *Id.; see also Mina v. Chester Cty.*, 679 Fed. App'x 192, 195 (3d Cir. 2017) (holding that court lacked jurisdiction over complaint that "describe[ed] a vast conspiracy against [the defendant] orchestrated by a group of 62 defendants" that defendant "blame[d] . . . for all wrongs that have befallen him, including his commitment to a mental institution, employment troubles, child-custody issues, and health concerns").

In a somewhat related context, when a plaintiff is proceeding *in forma pauperis*, 28 U.S.C. § 1915 ("Section 1915") requires the district court to "dismiss the case at any time if the court determines that . . . the action . . . is frivolous." 28 U.S.C. § 1915(e)(2)(B). This requirement grants district courts "the unusual power to pierce the veil of the complaint's factual allegations [at the pleading stage] and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327-28. "Clearly baseless" allegations include those which "describe[e] fantastic or delusional scenarios." *Id.; see*

*also Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (explaining that a complaint may be dismissed as "factually frivolous . . . if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional" (citations and internal quotation marks omitted)).

The "frivolous" standard is distinct from the "attenuated and unsubstantial" standard that deprives district courts of subject matter jurisdiction. *See DeGrazia*, 316 Fed. App'x at 173 (explaining that district court erred dismissing complaint as "frivolous" because plaintiff was not proceeding *in forma pauperis* but affirming because allegations were "so attenuated and unsubstantial as to be absolutely devoid of merit" (internal quotation marks and original alterations omitted)). Nevertheless, the two standards do not appear to differ in any significant way. *See id.; compare Neitzke*, 490 U.S. at 327–28 (explaining that factually frivolous allegations are those that "describe[e] fantastic or delusional scenarios") *with DeGrazia*, 316 Fed. App'x at 173 (explaining that courts lack subject matter jurisdiction over complaints that "rel[y] on fantastic scenarios lacking any arguable factual basis"). Accordingly, cases addressing the frivolous standard under Section 1915(e)(2), though not controlling, provide the Court with some legal guidance on how to address "fantastic scenarios" that

"lack[] any arguable factual basis." *See DeGrazia*, 316 Fed. App'x at 173.

On such case is *Burgess v. Bank of Credit & Commerce Int'l*, 996 F.2d 1223 (9th Cir. 1993) (unpublished opinion). In that case, John Burgess--an attorney, his wife, and his son--proceeding *in forma pauperis*--filed a complaint against several defendants "alleg[ing] a wide-ranging conspiracy to disbar, discredit, and imprison John Burgess, and render his wife and child homeless." *Id.*

> The named defendants include the Federal Bureau of Investigation (FBI), the Central Intelligence Agency (CIA), the Bank of Commerce and Credit International (BCCI), the State Bar of California, Edwin Meese, William Casey, Richard Thornburgh, Robert Gates, William Barr, William Webster, the County of Alameda, various lawyers and law firms and Chief Judge Thelton Henderson, among others. Burgess alleges that, while he was representing the plaintiffs in a civil lawsuit, the defendants conspired to stop him from discovering an alleged connection between the defendant of that lawsuit and BCCI. This conspiracy included paying off lawyers and law firms, illegally searching Burgess' office, filing complaints with the State Bar of California, bribing Chief Judge Henderson to convict Burgess of crimes of which he was not guilty, embezzling funds to which Burgess was entitled, and underpaying Burgess for a lecturing position at Pepperdine University.

*Id.* The district court dismissed the complaint *sua sponte* as frivolous under Section 1915, explaining that "the claims 'appear to be the product of a grandiose, self-centered imagination' and that the allegations in the complaint 'are

fanciful, incredible and ludicrous.'" *Id.* The Ninth Circuit affirmed on appeal. *Id.*

A similarly fantastic scenario was presented in *Curiale v. Walker*, 136 Fed. App'x 139 (10th Cir. 2005). In that case, the plaintiff filed a complaint alleging that the former governor of Utah "'promoted and protected illegal corruption and prostitution of adults that allegedly use minors' and 'should be considered responsible through the so-called 'chain of command' of having allowed corruption to run amuk [*sic* ]' in Utah." *Id.* at 140. After granting the plaintiff's petition to proceed *in forma pauperis*, the district court dismissed this claim *sua sponte* as frivolous under Section 1915. *Id.* The 10th Circuit affirmed, explaining that the defendant "allege[d] no facts to support this claim, other than his belief that waitresses at a certain local restaurant are prostitutes. The connection between these two allegations is so tenuous that the claim is based on 'fantastic or delusional scenarios' and was correctly dismissed as frivolous." *Id.* (quoting *Neitzke*, 490 U.S. at 328).

In *Callahan v. Yeates*, 988 F.2d 118 (9th Cir. 1993), the plaintiff, proceeding *in forma pauperis*, alleged that several state defendants "conspired to withhold a number of her documents in a civil suit related to the suspension of [the plaintiff]'s drivers license" and that "Commissioner Janene

Yeates is intent on destroying [the plaintiff] as part of a larger conspiracy involving [the plaintiff]'s "fierce and deeply hated enemies, the 7 Day Adventists, and/or Deputy Michael Gates, Esq. in the office of Attorney General." *Id.* The district court dismissed the case as frivolous. The Ninth Circuit affirmed, holding that the plaintiff's complaint "lacked an arguable basis in fact because it described 'fantastic or delusional scenarios.'" *Id.* (quoting *Neitzke*, 490 U.S. at 328); *see also Ejikeme v. Dir. F.B.I.*, 639 Fed. App'x 75 (3d Cir. 2016) (affirming dismissal of complaint as frivolous that alleged the FBI "attempted to infect [the plaintiff] with HIV, placed him on domestic and international spy satellites, and falsely informed the managers of Family Dollar and Bottom Dollar that [the plaintiff] was stealing merchandise from these stores").

    Here, Dorval alleges that the federal defendants

> are conducting an on-going criminal and civil investigation of me but blinded by their hatred and racial animus toward me, they willfully, and maliciously conspired, planned, organized and agreed to retain, recruit and pay a gang of mostly white individuals, including my white neighbors, and the Home Owners Association to harass, make excessive noise disturbances, harass me at public accommodations places: post office and airports, to stop and detain me and to commit assault and battery, beat, and injure me with deadly weapons. The gang of individuals recognized me and know that I am originally from Haiti. Their purpose is to prevent me through such force, violence, harassment and intimidation from seeking the equal protection

> of the laws and from enjoying the equal rights, privileges and immunities of citizens under the laws of speech, religion, movement, association and assembly; my right to petition the government for redress of grievances; my right to be represented by counsel; my rights to be secure in my persons and my home; and my right not to be enslaved nor deprived of life and liberty other than by due process of law, because of my race "Black" and national origin "Haitian".

ECF No. 30, Exh. 2 at 2-3.

The genesis of Dorval's claims is in the early 1990s in Union High School in New Jersey, which Dorval attended. In 1992, Dorval joined the football team, even though he "was discouraged from joining the football team" and "was not provided the playbook during the entire season." *Id.* at 15. A defendant in this action, Frank Fabio, also played on the team. Dorval alleges that Frank Fabio's "racial propensity toward people of color was evidence through his behavior and conducts during his time at Union High School." *Id.* at 14. Also in attendance at Union High School were "several unknown agents of the FBI and ICE, including a woman from Russia," who was "obsessed with [Dorval] in an unhealthy 'fatal attraction' kind of way" and "stalked and harassed" Dorval. *Id.* at 15.

After high school, Frank Fabio and the other federal defendants utilized "criminal and nefarious schemes and Ku Klux Klan tactics" to interfere in nearly every aspect of Dorval's life. *Id.* at 18. Dorval alleges that the federal defendants

"hired, organized, trained and funded a gang of mostly white individuals," that included his neighbors and employees of the grocery store Dorval frequented, to "intimidate and cause [Dorval] serious bodily injury and death to force [him] out of the United States because of [his] race and national origin." *Id.*

Dorval alleges that these recruited individuals committed a litany of wrongs against him. By way of example, Dorval alleges that the federal defendants directed others to tamper "with the screen door-closer of all the screen doors" at Dorval's apartment complex "to cause massive noise disturbances" designed to "drive [Dorval] out of [his] home." *Id.* at 25. The federal defendants also directed Dorval's neighbors and others to "stalk and engage in criminally aggressive and predatory conducts such as," among other things, "lunging at the corner of [Dorval's] eyes and flicking their heads each time that [Dorval] looked up." *Id.* at 27. While flying from St. Thomas to Florida on a JetBlue flight, Dorval alleges that the federal defendants directed an unknown passenger to "deliberately and purposely elbow [Dorval] for more than 30 minutes." *Id.* at 48. On his return flight, Dorval alleges that the federal agents directed a flight attendant to "slam[] the lockers repeatedly, and bang

pots or anything he could find during the entire flight." *Id.* at 50.

In sum, Dorval alleges that there exists a vast and wide-ranging conspiracy consisting of six federal agencies, two private corporations, nineteen named federal officers, and four named private individuals, along with a multitude of unnamed federal officers and private individuals. This alleged conspiracy targets Dorval, and Dorval alone, because Dorval is black and from Haiti. Its sole purpose appears to be making Dorval's life difficult, and in pursuit of that goal, it reaches nearly every aspect of his life. Dorval alleges that the wrongs allegedly committed against him were done at the hands of a mostly unknown "gang" of individuals recruited by the federal defendants. Significantly, Dorval alleges no facts connecting any federal defendants to these individuals. *Cf. Curiale*, 136 Fed. App'x at 139. The Court finds that these allegations describe a "fantastic scenario[] lacking any arguable factual basis," *Degrazia*, 316 Fed. App'x at 173, and fall squarely within the category of cases discussed above.[3]

---

[3] Dorval has filed six motions captioned "Motion for a Writ of Mandamus to Vacate or Modify the Government's Gag Order." *See* ECF Nos. 80, 89, 101, 103, 114, 117. In these motions, Dorval appears to assert that the federal defendants have obtained a court order "prevent[ing] [Dorval] from talking with [his] family and friends." *See* ECF No. 81 at 2. The Court is unaware of such an order, and Dorval offers no evidence of its existence. Thus, this claim bolsters the Court's conclusion that Dorval's claims "are so attenuated and unsubstantial as to be absolutely devoid of merit," *Hagans,* 415 U.S. at

An appropriate judgment follows.

                                              S\_____
                                                  **Curtis V. Gómez**
                                                  **District Judge**

---

536. *See Degrazi*, 316 Fed. App'x at 173 (explaining that plaintiff's argument on appeal that defendants and district court conspired to dismiss plaintiff's claim, for which plaintiff "offer[ed] no credible evidence," supported district court's conclusion that claims lacked merit).